IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>CHRISTOPHER KOFI NOBLE,<br><br>                  Defendant. | Case No. 3:18-cr-00099-TMB-1<br><br>**ORDER ON DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY [DKT. 118]** |

## I. INTRODUCTION

The matter comes before the Court on Defendant Christopher Kofi Noble's "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" (the "Motion").[1] The United States filed an Opposition to the Motion, and Noble filed a Reply.[2] The Motion is now fully briefed and ripe for resolution. The Court finds that a hearing is not necessary.[3] For the reasons discussed below, Noble's Motion is **DENIED**.

## II. BACKGROUND

### A. Case and Underlying Conviction

On August 22, 2018, a grand jury indicted Noble for Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4] The grand jury initially indicted Noble on

---

[1] Dkt. 86 (Amend. Motion); *see also* Dkt. 72 (*Pro Se* Motion).

[2] Dkts. 88 (Opposition); 89 (Reply).

[3] *See* D. Ak. HCR 8.1 (Evidentiary Hearing).

[4] Dkt. 2 (Indictment).

1

one count of the offense[5] but later added four additional counts.[6] On January 15, 2019, Noble pleaded guilty to one count, and the Court dismissed the other four counts upon the Government's motion.[7] Attorney David E. Nesbett represented Noble to this point in the proceedings but withdrew shortly after Noble's change of plea and was replaced by Brian Heady.[8]

As part of his plea agreement, Noble admitted that he knowingly possessed ammunition that was used in a residential shooting, that the ammunition traveled through interstate commerce, and that at the time of the offense he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.[9] He also waived his right to appeal, including his right to collaterally attack his conviction and sentence on any grounds other than ineffective assistance of counsel and the voluntariness of his guilty plea.[10]

On August 1, 2019, the Court sentenced Noble to a term of 120 months' imprisonment followed by three years of supervised release.[11] Noble is currently serving his sentence at United States Penitentiary Victorville and has a projected release date of April 5, 2027.[12]

/ / /

---

[5] *Id.*

[6] Dkt. 32 (Second Superseding Indictment).

[7] Dkts. 41 (Plea Agreement); 44 (Minute Entry on Change of Plea); 67 (Minute Entry re Imposition of Sentence).

[8] Dkt. 53 (Order Granting Unopposed Motion to Substitute Counsel).

[9] Dkts. 41 at 4; 65 at 1–2 (Second Addendum to Plea Agreement).

[10] Dkt. 41 at 10–11.

[11] Dkt. 70 (Judgment).

[12] Christopher Kofi Noble, Reg. No. 20401-006, Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Sept. 21, 2021).

### B. Section 2255 Motion

Noble, proceeding *pro se*, filed an initial Motion on June 22, 2020.[13] He then obtained counsel and filed an amended Motion on December 4, 2020.[14] In his Motion, Noble seeks relief on the ground that his sentencing counsel, Brian Heady, provided him with ineffective assistance of counsel by failing to consult with him on whether he should pursue an appeal.[15] Noble argues that Heady's performance was deficient because "not even a minimal conversation occurred" about Noble's appeal prospects.[16] He analogizes his situation to the case of *Rojas-Medina v. United States*,[17] in which the First Circuit concluded that a defense attorney's "two-minute chat" with a client who had demonstrated an interest in appealing was "insufficient to discharge [the attorney's] duty" to consult him about appealing.[18] Noble admits he never indicated that he wished to appeal.[19] But he argues that his failure to do so should be excused because it was the result of Heady's "fail[ure] to provide Mr. Noble with the pertinent information that was critical to know in order to instruct counsel to file a notice."[20]

---

[13] Dkt. 72.

[14] Dkt. 86.

[15] *Id.* at 8–12.

[16] *Id.* at 11.

[17] 924 F.3d 9 (1st Cir. 2019).

[18] *Id.* at 17.

[19] Dkt. 86 at 8.

[20] *Id.*

3

Noble also argues that Heady performed deficiently by failing to be aware of two recent appellate decisions: *Garza v. Idaho*[21] and *United States v. Fabian-Baltazar*.[22] In *Garza*, the Supreme Court held that appeal waivers do not affect the presumption of prejudice that attaches when an attorney fails to fulfill his or her Sixth Amendment duties to consult with a client who has expressed interest in appealing.[23] In *Fabian-Baltazar*, the Ninth Circuit recognized and applied the Supreme Court's ruling in *Garza*.[24] Noble argues that Heady's lack of awareness of these two recent cases' holdings constituted deficient performance.[25]

Noble argues that Heady's deficient performance entitles him to a presumption of prejudice even if his prospects on appeal may have been "poor."[26] He argues that, combined with Heady's deficient performance, this presumption of prejudice establishes a Sixth Amendment violation under the test articulated in *Strickland v. Washington*.[27] Based on these grounds, Noble requests the Court vacate its judgment and issue a new judgment *nunc pro tunc* that will allow him to file a notice of appeal.[28]

---

[21] 139 S. Ct. 738 (2019).

[22] 931 F.3d 1216 (9th Cir. 2019) (per curiam).

[23] *Garza*, 139 S. Ct. at 747, 749.

[24] *Fabian-Baltazar*, 931 F.3d at 1217–18.

[25] Dkt. 86 at 14.

[26] *Id.* at 8 (quoting *Garza*, 139 S. Ct. at 747).

[27] 466 U.S. 668, 687–96 (1984).

[28] *Id.* at 19.

On January 6, 2021, the Government filed its Opposition to the Motion.[29] The Government argues that Noble's claim is without merit for two reasons. First, the Government argues that Noble's answers to the Court's on-the-record inquiries into the voluntariness of his appeal waiver and his attorney's representation belie his claim that his attorney's performance was deficient.[30] Citing the transcripts of the change of plea hearings, the Government points out that on two separate occasions Noble affirmatively answered the Court's inquiries about whether he understood that he was waiving both his rights to direct appeal and most of his rights to collaterally attack his conviction.[31] The Government also points out that Noble indicated to the Court at his change of plea hearing that his initial attorney, Nesbett, had discussed the case with him and that he was satisfied with the work Nesbett had done for him.[32] The Government concludes that it would be "counterintuitive and def[y] logic" to conclude that Heady's failure to discuss a potential appeal with Noble constituted deficient performance under these circumstances.[33]

Second, the Government argues that Noble cannot show prejudice from his failure to appeal within the 14-day deadline. The Government argues that Noble's factual admissions in his plea agreement preclude him from having "even a modicum of probability of success" on direct appeal.[34] The Government also observes that Noble's appeal waiver expressly waives all rights to

---

[29] Dkt. 88.

[30] *Id.* at 7–11 (citing Dkt. 81 at 13 (Tr. Change of Plea Hearing)).

[31] *Id.* at 8–9.

[32] *Id.* at 10–11.

[33] *Id.* at 7.

[34] *Id.* at 12.

direct appeal.³⁵ The Government concludes that, under these circumstances, Noble cannot demonstrate any possibility of prejudice from his lost opportunity to appeal. Therefore, the Government argues that Noble's § 2255 Motion should be denied.³⁶

Noble filed a Reply and Memorandum of Points and Authorities on February 1, 2021.³⁷ Noble argues that the Government's argument erroneously conflates "knowing there is a waiver and knowing a notice of appeal can be filed."³⁸ He argues that the voluntariness of his appeal waiver is not relevant to whether the Sixth Amendment required his attorney to consult him about whether to appeal.³⁹ He also argues that precedent does not require defendants to demonstrate probability of success on appeal to establish prejudice but instead requires defendants to demonstrate only that they were deprived of the right to appeal.⁴⁰ Noble reiterates that the Court should vacate the judgment in his case and enter a new judgment *nunc pro tunc* that allows him to file a notice of appeal.⁴¹

/ / /

/ / /

---

³⁵ *Id.* at 12–13.

³⁶ *Id.* at 15.

³⁷ Dkt. 89.

³⁸ *Id.* at 2.

³⁹ *Id.*

⁴⁰ *Id.* at 3–4.

⁴¹ *Id.* at 4.

### III.   LEGAL STANDARD

**A.   § 2255 Motions to Vacate, Set Aside, or Correct Sentences**

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States.[42] On a motion for relief under 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[43] If a court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[44]

"[T]he district court may deny a § 2255 motion without holding an evidentiary hearing if '(1) the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather than statements of fact.'"[45] Thus, "if the record refutes the

---

[42] 28 U.S.C. § 2255(a).

[43] 28 U.S.C. § 2255(b).

[44] *Id.*

[45] *United States v. Geozos*, No. 3:06-CR-082-RRB-JDR, 2010 WL 4942571, at *2 (D. Alaska Nov. 24, 2010) (quoting Dhillon Khosla, 28 U.S.C. § 2255 Checklist/Updated Supplement to Habeas Corpus Outline at 5 (2005)); *see also Baumann v. United* States, 692 F.2d 565, 571 (9th Cir. 1982) (citation omitted) ("Mere conclusory statements by the petitioner do not justify a hearing"); *Lopez-Lopez v. United States*, No. CR 05-1242 TUC-DCB, CV 06-489 TUC-DCB, 2006 WL 2850055, at *1 (D. Ariz. Sept. 28, 2006) (quoting Rule 4(b), Rules Governing § 2255 Actions) ("A district court shall summarily dismiss a § 2255 petition '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'"); *Bonds v. United States*, No. C18-0131-JCC, 2018 WL 2216089, at *2 (W.D. Wash. May 15, 2018); *see also Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal quotation marks and citation omitted) (quoting *Marrow v. United State*s, 772 F.2d 525, 526 (9th Cir. 1985)) ("Where a section 2255 motion is based on alleged occurrences outside

7

Case 3:18-cr-00099-TMB   Document 90   Filed 10/20/21   Page 7 of 16

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[46] "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts."[47]

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is rooted in the Sixth Amendment right to counsel, which extends to the plea-bargaining stage of a criminal proceeding.[48] A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-pronged test set out in *Strickland*.[49] Under that test, a defendant must show that (1) counsel's performance was deficient, *i.e.*, "fell below 'an objective standard of reasonableness,'"[50] and (2) that the deficiency was prejudicial to the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[51]

/ / /

/ / /

---

the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.").

[46] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[47] *Shah*, 878 F.2d at 1159 (internal quotation marks and citation omitted).

[48] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[49] 466 U.S. at 687–96.

[50] *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 688).

[51] *Strickland*, 466 U.S. at 694.

1. Strickland *Prong One – Deficient Performance*

In addressing the first element, the performance prong, courts "must be highly deferential" to counsel.[52] Counsel's conduct should be evaluated from their perspective at the time of the representation.[53] Generally, counsel's performance is strongly presumed to fall within the wide range of reasonably professional competent assistance.[54] "The court must [] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[55]

If an allegation of incompetence involves defense counsel's failure to file a notice of appeal, the initial question is whether the defendant explicitly instructed counsel to appeal. If they did, the attorney's failure to file a notice of appeal was "professionally unreasonable."[56] If the defendant instructed counsel not to file an appeal, however, they "cannot later complain that . . . counsel performed deficiently."[57]

When a defendant did not "clearly convey[] his wishes one way or the other," courts must ask the "separate, but antecedent" question of whether counsel consulted the defendant about appealing.[58] If counsel consulted the defendant, counsel's performance is deficient only if they

---

[52] *Id.* at 689.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 690.

[56] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

[57] *Id.*

[58] *Id.* at 478.

9

"fail[ed] to follow the defendant's express instructions with respect to an appeal."[59] If counsel did not consult the defendant, counsel's performance is deficient only if "there is reason to think (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[60]

In evaluating whether one of these two conditions was satisfied, the district court must consider "all relevant factors in a given case."[61] One "highly relevant factor" is whether the defendant has pleaded guilty, in which case courts should also consider "whether the defendant received the sentence bargained for" and "whether the plea expressly reserved or waived some or all appeal rights."[62]

### 2. Strickland *Prong Two – Prejudice to the Defense*

The second prong, prejudice to the defense, "focuses on . . . whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[63] To establish the proceeding was fundamentally unfair, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[64] This standard requires more than simply asserting an error that could theoretically

---

[59] *Id.*

[60] *Id.* at 480.

[61] *Id.*

[62] *Id.*

[63] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[64] *Strickland*, 466 U.S. at 694.

have some effect on the outcome; but a showing by a preponderance of the evidence is not required by *Strickland*.[65]

If counsel's deficient performance results in a defendant losing "the entire [appellate] proceeding itself," a presumption of prejudice arises and "[n]o specific showing of prejudice [is] required."[66] In such cases, the defendant needs only show a "reasonable probability" that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[67]

Ultimately, a defendant must prove *both* deficient performance and consequent prejudice to succeed in establishing ineffective assistance.[68] The court may evaluate one or both prongs in determining whether to grant a defendant's habeas petition on these grounds.[69] However, the court need not inquire whether counsel's performance was deficient if such alleged deficiency could not have resulted in prejudice under *Strickland*.[70]

## IV. ANALYSIS

Having reviewed his arguments, the Court finds that an evidentiary hearing is unnecessary in Noble's case because it would provide no reasonable chance of altering the Court's view of the facts before it. The Court further finds that Noble's petition is without merit. Noble has not made the required showing under *Strickland* that defense counsel's performance was deficient.

---

[65] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008).

[66] *Flores-Ortega*, 528 U.S. at 483 (second and third alterations in original) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

[67] *Id.* at 484.

[68] *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("[P]etitioner bears the burden of establishing both.").

[69] *See Pizzuto v. Arave*, 280 F.3d 949, 954–55 (9th Cir. 2002).

[70] *Id.*

### A. Noble Has Not Established Ineffective Assistance of Counsel

Noble claims that his sentencing attorney, Heady, provided him with ineffective assistance of counsel by failing to consult Noble about appealing his conviction and sentence. He claims that had Heady informed him about the process, he would have directed Heady to file a notice of appeal within the prescribed 14-day deadline. He argues that Heady's failure to consult him about appealing and the accompanying presumption of prejudice entitle him to a new judgment that will allow him to file an appeal.

Noble's claims are unpersuasive. Noble's argument assumes that Heady's failure to consult him about appealing necessarily constituted deficient performance. This is not so. The Sixth Amendment's guarantee of ineffective assistance of counsel requires defense counsel to consult their clients about appealing only when "there is reason to think that either (1) a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[71]

In this case, neither Noble's affidavit nor Heady's affidavit contain any evidence that Noble ever indicated to Heady that he was interested in appealing. Noble's affidavit merely says that he was unaware of the 14-day notice of appeal deadline and that he would have directed Heady to file notice had Heady consulted him about it.[72] Similarly, Heady's affidavit contains no evidence that Noble demonstrated any contemporaneous dissatisfaction with the outcome of his case.[73]

Noble seems to consider the duty to consult to be categorical. He cites the First Circuit's decision in *Rojas-Medina* for the proposition that a "two-minute chat" is insufficient to discharge

---

[71] *Id.* at 480.

[72] Dkt. 86-2 at ¶¶ 2–5 (Noble Aff.).

[73] Dkt. 86-1 at ¶¶ 1–5 (Heady Aff.).

the duty.[74] But Noble misinterprets the *Rojas-Medina* court's decision. In that case, the court held that a defense attorney had a constitutional duty to consult his client about appealing because the client "made it luminously clear" to the attorney that he was "dissatisfied with the sentence imposed and interested in whatever relief might be available."[75] The *Rojas-Medina* court did not create a categorical rule that attorneys must always consult with their clients about appealing. The court could not have created such a rule, in fact, since the Supreme Court considered and explicitly rejected it in *Flores-Ortega*.[76] Unlike the *Rojas-Medina* defendant, moreover, there is no evidence that Noble ever demonstrated similar dissatisfaction to his attorney.

To the extent he recognizes that a defendant must express an interest in appealing, Noble argues that the Court should excuse his failure to demonstrate any interest by attributing it to Heady's "fail[ure] to provide Mr. Noble with the pertinent information that was critical to know in order to instruct sentencing counsel to file a notice [of appeal]."[77] But this argument bootstraps into existence a rule that defense attorneys have a *per se* duty to consult legally unsophisticated clients about appeals. Justice Souter argued for such a rule in his concurrence-dissent in *Flores-Ortega*,[78] but the majority rejected it.[79] A defendant must "reasonably demonstrat[e]" an interest in appealing, and there is no evidence that Noble did so here.

---

[74] Dkt. 86 at 11 (quoting *Rojas-Medina*, 924 F.3d at 17).

[75] *Rojas-Medina*, 924 F.3d at 17.

[76] *Flores-Ortega*, 528 U.S. at 479–80.

[77] Dkt. 86 at 8.

[78] *Flores-Ortega*, 528 U.S. at 488–93 (Souter, J., concurring in part and dissenting in part).

[79] *Id.* at 479–80. Noble erroneously speaks of a "requirement imposed in *Flores-Ortega*" that counsel "routinely consult with [defendants] regarding the possibility of appeal." Dkt. 86 at 13. The *Flores-Ortega* Court imposed no such requirement. It merely said that it would be a "better practice" for counsel to routinely consult with their clients in such situations, and specifically

13

Additionally, Noble's situation was not one in which "a rational defendant would want to appeal."[80] The only example the *Flora-Ortega* Court gave for such situations was where "there are nonfrivolous grounds for appeal."[81] Noble suggests only one possible ground on which his conviction could have been directly challenged: the sufficiency of his predicate felony conviction and whether he knew of his status as a convicted felon.[82] Noble raises the possibility that he might have appealed on the ground that the Government may not have satisfied the "felon status" scienter requirement of 18 U.S.C. §§ 922(g) and 924(a). He argues that because the predicate felony the Government relied on—a 2017 Alaska state conviction—apparently resulted only in a one-year sentence, it may have been legally insufficient to satisfy the elements of the statute, which speaks of sentences "exceeding one year."[83]

This argument fails for two reasons. First, 18 U.S.C. § 922(g) does not define a felon to be a person who has received a sentence exceeding one year. It defines a felon to be a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[.]"[84] The statute operates on the possible term of imprisonment associated with a conviction, not on the specific sentence a defendant received. If the offense for which Noble was convicted had an upper sentencing bound of more than one year's imprisonment, this argument would fail.

---

explained that attorneys are under no constitutional obligation to do so. *Flores-Ortega*, 528 U.S. at 479–80.

[80] *Id.* at 480.

[81] *Id.*

[82] Dkt. 86 at 15–18.

[83] *Id.*

[84] 18 U.S.C. § 922(g)(1).

Second, Noble expressly admitted in the second addendum to his plea agreement that his 2017 Alaska state conviction made him a convicted felon for the purposes of the statute, and that he knew this at the time of the offense.[85] This likely precluded Noble from advancing any nonfrivolous grounds on which to challenge the sufficiency of the predicate felony element of his conviction. Noble's situation was not one in which a rational defendant who had pleaded guilty and waived all direct appeal rights would have wanted to appeal.

Accordingly, the Court concludes that Heady's failure to consult with Noble about appealing did not constitute deficient performance under the *Strickland* standard. Because a defendant must establish both prongs of the *Strickland* test to establish ineffective assistance of counsel,[86] the Court's conclusion renders consideration of Noble's prejudice arguments unnecessary.

### B. Noble Has Not Shown an Evidentiary Hearing Is Necessary

A district court can dismiss a § 2255 motion without an evidentiary hearing if its factual claims can be refuted from "documentary testimony and evidence in the record."[87] Even if the resolution hinges on a matter of credibility, no hearing is necessary if "the district court 'conclude[s] that [a full evidentiary] hearing would not offer any reasonable chance of altering its

---

[85] Dkt. 65 at 3.

[86] *Quintero-Barraza*, 78 F.3d at 1348.

[87] *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (per curiam); *Miller v. United States*, 339 F.2d 704, 705 (9th Cir. 1964) (per curiam).

view of the facts.'"[88] A hearing is likewise unnecessary to resolve claims that "are so palpably incredible or so patently frivolous or false as to warrant summary dismissal."[89]

Here, the Court concludes an evidentiary hearing is unnecessary because it would provide no reasonable chance of altering the Court's view of the facts before it.

## V. CONCLUSION

For the foregoing reasons, the Court finds that Noble's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct is without merit. Accordingly, Noble's Motions at Dockets 72 and 86 are **DENIED**.

**IT IS SO ORDERED.**

Dated at Anchorage, Alaska, this 20th day of October, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[88] *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

[89] *Baumann*, 692 F.2d at 570.